UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TRINA JENKINS, et al., | CASE NO. C15-5508 BHS |
| Plaintiffs, | |
| v. | ORDER DENYING DEFENDANT'S MOTIONS TO EXCLUDE AND DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | |
| Defendant. | |

This matter comes before the Court on the Motion for Class Certification of Plaintiffs Charles Van Tassel and Jeremy Plank (collectively "Plaintiffs")[1] and Defendant State Farm Automobile Insurance Company's ("State Farm") motions to exclude the proffered expert testimony of Dr. Bernard Siskin, Ph.D. ("Siskin") and Angelo Toglia, Jr., P.E. ("Toglia"). Dkts. 42, 44, 48. Also pending before the Court is State Farm's motion for partial summary judgment, which the Court will address in a separate order.

---

[1] An amended complaint was filed on February 23, 2016 to include Plaintiffs Van Tassel and Plank. Dkt. 28. Since the filing of this lawsuit, Plaintiff Jenkins's insurance claim with Defendant State Farm has been covered under her policy as a "total loss." Dkt. 48 at 1. Accordingly, only Plaintiffs Van Tassel and Plank seek appointment as class representatives. *Id.*

Dkt. 60. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and, for the reasons stated herein, denies State Farm's motions to exclude and Plaintiffs' motion for class certification.

## I. PROCEDURAL HISTORY

On July 23, 2015, Plaintiff Trina Jenkins ("Jenkins") filed her complaint in this action. Dkt. 1. On February 23, 2016, Plaintiffs Jenkins, Van Tassel, and Plank filed an amended complaint adding claims from Van Tassel and Plank. Dkt. 28. On August 16, 2016, the Court issued a scheduling order establishing deadlines for the disclosure of expert testimony, motions to exclude expert testimony, and motions for class certification. Dkt. 33. On October 14, 2016, Plaintiffs timely filed their disclosure of expert witnesses. Dkt. 34.

On August 7, 2017, the Court issued an order extending the deadlines for motions to exclude and motions for class certification to August 30, 2017. Dkt. On September 5, 2017, State Farm untimely filed its motions to exclude the testimony of Siskin and Toglia. Dkts. 42, 44. On September 6, 2017, Plaintiffs untimely filed their motion for class certification. Dkt. 48. Neither party has objected to the untimeliness of any of these motions.

On September 13, 2017, the Court again extended the scheduling order by delaying the deadlines for the parties' responses to the filed motions until October 5, 2017. Dkt. 51. On October 5, 2017, this response deadline was further extended to October 10, 2017. Dkt. 53.

On October 10, 2017, State Farm responded to Plaintiffs' motion for class certification and Plaintiffs responded to State Farm's motions to exclude. Dkts. 54, 58, 62. On November 13, 2017, the parties filed their replies. Dkts. 69, 70, 71.

## II. FACTUAL BACKGROUND

### A. Plaintiff Van Tassel's Claim

On January 14, 2015, Plaintiff Van Tassel's vehicle was rear ended by an underinsured motorist. Dkt. 56-1 at 129. The same day, Plaintiff Van Tassel reported the accident to State Farm. *Id.* On January 30, 2015, Plaintiff Van Tassel informed State Farm that he "want[ed] diminished value" to be covered in his Underinsured Motorist ("UIM") claim. *Id.* at 133.

As a result of the accident, Plaintiff Van Tassel's vehicle required over $16,000 in repairs, which was paid for in part by the at-fault driver's insurance while the rest was paid for under Plaintiff Van Tassel's policy with State Farm for UIM coverage. Dkt. 56-1 at 129–30; Dkt. 49-22 at 4; Dkt. 49-23 at 8, 13; Dkt. 56-1 at 129. The repairs included body and frame repairs. Dkt. 49-23 at 3–5, 10.

After the vehicle went through initial repairs, Plaintiff Van Tassel began to notice paint flakes on the repaired portion of the vehicle and a vibration while driving. Dkt. 56-1 at 13, 26. After these problems surfaced, Plaintiff Van Tassel requested that State Farm conduct an additional inspection to make sure there was no remaining unrepaired damage, but State Farm refused. Dkt. 49-22 at 6. While it is clear that State Farm handled Plaintiff Van Tassel's accident as a UIM claim, State Farm noted the record lacks any

indication that he submitted a specific claim for diminished value with accompanying documentation.

**B.      Plaintiff Plank's Claim**

On June 3, 2015, Plaintiff Plank was in a collision caused by an at-fault driver who turned into his lane of traffic in front of him. Dkt. 56-1 at 30. After the accident, Plaintiff Plank discussed diminished value coverage via phone call with the State Farm insurance agency where he obtained his policy, however he never discussed diminished value with a State Farm representative handling his claim. *See id.* at 35. The at-fault driver's insurer handled Plaintiff Plank's claim, including approximately $19,000 in repairs. *Id.* at 188.

In a letter dated October 21, 2015, Plaintiff Plank informed State Farm of his pending settlement offer from the at-fault driver's insurer in the amount of the at-fault driver's policy limit. Dkt. 56-1 at 154. In the letter, Plaintiff Plank offered State Farm ten days in which to purchase Plaintiff's cause of action against the at-fault driver for the remaining sum under the applicable policy limit, "so as not to prejudice [State Farm's] right of subrogation." *Id.* The letter also indicated that Plaintiff Plank would be making a UIM claim for the remaining balance of the diminished value of his vehicle after he received a response from State Farm. *Id.* Attached to the letter was a statement from a Ford dealer estimating Plaintiff Plank's loss in diminished value at approximately $10,000. *Id.* at 153–54.

Ultimately, Plaintiff Plank accepted the settlement payment from the at-fault driver's insurer. *Id.* at 52. In an entry dated November 27, 2015, State Farm's claim file

indicates the letter was received and that the person making the entry requested a return call be made to Plaintiff Plank's attorney to determine whether he had indeed settled his diminished value claim with the at-fault driver's insurer. *Id.* at 150. The record does not reflect whether this return call was ever made or whether Plaintiffs' attorney responded. It does not appear that any further request or information was submitted to State Farm by Plaintiff Plank after the letter dated October 21, 2015.

### III.   DISCUSSION

**A.      Motions to Exclude Expert Testimony**

State Farm has filed motions to exclude the proffered expert testimony of witnesses Siskin and Toglia. Dkts. 42, 44. Expert testimony is only admissible if it satisfies several criteria, including the requirement that it "is the product of reliable principles and methods." Fed. R. Evid. 702(c). "Thus, before admitting expert testimony, courts must make a 'preliminary assessment' of (1) whether the expert is qualified to present the opinion offered, (2) 'whether the reasoning or methodology underlying the testimony is . . . valid,' and (3) 'whether that reasoning or methodology properly can be applied to the facts in issue.'" *Lewert v. Boiron, Inc.*, 212 F. Supp. 3d 917, 924 (C.D. Cal. 2016) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). In order to facilitate the Court's gatekeeper function for such testimony, the Federal Rules of Civil Procedure require that expert disclosures be accompanied by a "detailed and complete written report, stating the testimony the witness is expected to present during direct examination, together with the reasons therefor." Fed. R. Civ. P. 26(a)(2) advisory committee's note.

### 1. Siskin's Report

State Farm challenges Siskin's report on the basis that it is premised on data that is either improperly outdated or unavailable for testing the reliability of Siskin's linear regression analysis. An "expert's opinion testimony must satisfy the requirements of Rule 702—but that requires consideration of the overall sufficiency of the underlying facts and data, and the reliability of the methods, as well as the fit of the methods to the facts of the case." *United States v. W.R. Grace*, 504 F.3d 745, 765 (9th Cir. 2007).

Siskin's report relies upon a spreadsheet database purporting to contain data gathered regarding numerous vehicles with model years of 1995 to 2001 being sold at auction across the country. To collect the data for the study, inspectors were sent across the United States to inspect the price and condition of vehicles being sold at wholesale auction and record their findings on a provided form. Dkt. 43-1 at 12–14, 51. This information was subsequently compiled into spreadsheets summarizing the data. *See id.* at 27, 34, 39. Unfortunately, except for the spreadsheet database, the underlying records for this study have since been lost or destroyed, including the completed reports from the vehicle inspectors, any materials provided to the inspectors, any copy of the form used for data collection, and Siskin's own notes. *Id.* at 7–12. Siskin has noted that when a study such as this is submitted to a journal, the underlying records are generally not submitted, as it is the coding and the results which are tested, as opposed to the actual data. *Id.* at 52.

Reviewing the parties' submissions in support of and in opposition to Siskin's report, the Court concludes that State Farm's arguments do not constitute reasons for

excluding Dr. Siskin's report at this stage. Siskin's report describes a two-step methodology for determining class-wide damages that can be reliably replicated by other experts. *See* Dkt. 43-2 at 2–7. Accordingly, Siskin's expert testimony is of valuable assistance to the extent that it describes the existence of such a methodology.

Nonetheless, State Farm is correct that Siskin's specific regression analysis from 2001 is outdated and a poor "fit" for the facts of this case. Whether the age of the underlying data likely results in a more "conservative" damages estimate does not matter, as the study was based on an examination of very different vehicles than are available in the market today and both parties acknowledge that this will have a material impact on the results of the linear regression analysis. Moreover, the loss of the underlying inspection reports, notes, and even the form used to record the data makes it impossible for State Farm to accurately test the reliability of the spreadsheet database upon which Siskin's 2001 regression analysis is based. Therefore, to the extent Plaintiffs might seek to use Siskin's report to rely upon the 2001 regression analysis to argue for the specific reduction from pre-loss value of either 4.56% for structural damage or 1.59% reduction for each "area" of damage, such an outdated analysis is unreliable when applied to this case.

Additionally, the Court rejects State Farm's argument that Siskin's proposed testimony should be excluded because his proposed method fails to account for unrecoverable stigma damages or improper repairs. Diminished value and stigma damages have been distinguished as follows:

> A vehicle suffers "diminished value" when it sustains physical damage in an accident, but due to the nature of the damage, it cannot be fully restored to its preloss condition. Weakened metal that cannot be repaired is one such example. In contrast, "stigma damages" occur when the vehicle has been fully restored to its preloss condition, but it carries an intangible taint due to its having been involved in an accident.

*Moeller v. Farmers Ins. Co. of Washington*, 173 Wn.2d 264, 271 (2011). The Washington Supreme Court has stated that "[s]tigma damages are generally disfavored," while leaving it to trial courts to explore "the nature of the damages [in diminished value] claims and how they can be proved." *Id.*

Siskin's report indicates that each of the vehicles relied upon in his 2003 regression analysis suffered from actual diminished value, as the survey included only vehicles which were properly repaired but still suffered from visible changes to the vehicles' physical condition. Dkt. 43-2 at 30. Therefore, he contends that "none of the vehicles identified as having been in accidents . . . in [his] sample were 'stigma' vehicles," as they were not restored completely to their pre-loss condition. The difficulty with this interpretation is that it ignores the reality that vehicles suffering from diminished value due to an accident will also necessarily incur an "intangible taint" that reduces their market value. For instance, a buyer may be faced with the choice of choosing between either a vehicle that has suffered paint damage due to a collision with an underinsured motorist or one that has suffered similar paint damage due to a vandal scratching the car with a key. If both cars have had the paint properly repaired and are offered at the same price, it seems far more likely that the buyer would instinctively choose the vandalized vehicle. Even if the vehicles are now identical in their actual

1   physical condition, the collision vehicle will suffer from additional stigma damages due

2   to the higher likelihood of latent damage that accompanies a collision.[2]

3       Regardless, Siskin's report has provided at least one method for conducting a

4   survey in a manner that would allow a linear regression analysis to account for and

5   distinguish between stigma damages and actual diminished value. *See* Dkt. 43-2 at 30–

6   31. Because the Court would require that Siskin perform an updated regression analysis

7   before allowing him to opine on any specific assessment of class-wide damages based on

8   class modeling, it may be appropriate to incorporate this method into a new survey and

9   analysis for future cases. However, as the Court will not certify the proposed class for

10  other reasons, as stated below, such a study would be an unnecessary expense for this

11  particular case.

12      While the Court finds that Siskin's report might describe reliable methods for

13  determining class-wide damages, the Court agrees with State Farm that the report lacks

14  the necessary overall sufficiency of "the underlying facts and data" or an appropriate "fit

15  of the methods to the facts of this case." *W.R. Grace*, 504 F.3d a 765. Accordingly, while

16  Siskin's report is sufficient to help support Plaintiff's present argument regarding the

17  claimed superiority of a class action in handling the proposed class's claims, Siskin

18  _____

19      [2] It is questionable whether Washington State law requires a plaintiff to distinguish between diminished value and stigma damages so long as the vehicle has suffered from some actual physical damage that cannot be restored to its pre-loss condition. The Washington State

20  Supreme Court has stated only that "[s]tigma damages are generally disfavored," which implies that they may be allowed in certain instances. *Moeller*, 173 Wn.2d 264 at 271. *See Franklin v.*

21  *Gov't Employees Ins. Co.*, C10-5183BHS, 2011 WL 5166458, at *3–4 (W.D. Wash. Oct. 31, 2011) One possible scenario might be where a vehicle has clearly suffered concurrent diminished

22  value and stigma damages, but it is impracticable to precisely formulate how much of the pre-loss value reduction is attributable to State Farm.

would need to perform from the beginning the two-step methodology described in his report, including an updated regression analysis study, if Plaintiffs seek to rely on any expert testimony from Siskin to establish class-wide damages in future cases.

### 2. Toglia's Report

State Farm also moves to exclude any expert testimony from witness Toglia on the bases that (1) "he is not an expert in valuation of vehicles or their repair," (2) his methodology for determining whether a vehicle was different before and after an accident is unreliable, and (3) his testimony is irrelevant. Toglia's testimony describes how a vehicle that falls within the proposed class will likely suffer from qualitative post-repair deviations that are undetectable or unquantifiable absent impracticable destructive testing.

State Farm's arguments are unwarranted. In addition to his engineering credentials, Toglia has considerable experience in analyzing the collision performance of automobiles and the resulting damage. *See* Dkt. 45-1 at 4–5. He is qualified to testify as to what damage is likely sustained by a vehicle and its components during a particular type of collision and whether those damages will likely remain even after proper repairs as qualitative deviations from a vehicle's pre-loss condition. While State Farm complains that Toglia does not provide a concrete definition for "qualitative differences" or post-repair deviations in his report, this does not make his testimony or methodology unreliable. Toglia's report adequately sets forth numerous examples of the types of post-repair deviations that may be expected in such vehicles, including changes in metal material properties and the deterioration of vehicle components that result from the

described phenomenon of "internal force flow." *See id.* at 6–7. State Farm is correct that Toglia does not appear qualified to testify on whether these purported deviations have any substantial effect on a vehicle's post-repair market value. Nonetheless, his testimony regarding the likely existence of post-repair deviations is still relevant to the question of whether the vehicles described in the proposed class definition likely "sustain[ed] physical damage in an accident, but due to the nature of the damage, . . . cannot be fully restored to [their] preloss condition." *Moeller*, 173 Wn.2d at 271 (quotation omitted). State Farm's motion to exclude Toglia's testimony is denied.

**B.      Motion to Certify**

Plaintiffs seek to certify a class of State Farm insureds with Washington policies under Federal Rule of Civil Procedure 23. Dkts. 48, 74. Plaintiffs' class certification motion is one of several that have come before Washington courts in diminished value cases. *See, e.g.*, *Achziger v. IDS Prop. Cas. Ins. Co.*, C14-5445 BHS, 2016 WL 1276048 (W.D. Wash. Apr. 1, 2016); *Meyer v. Am. Family Mut. Ins. Co.*, No. 3:14-cv-5305-RBL, 2015 WL 5156594 (W.D. Wash. Sept. 2, 2015); *Moeller*, 173 Wn.2d 264. Under Washington law, "[a] vehicle suffers 'diminished value' when it sustains physical damage in an accident, but due to the nature of damage, it cannot be fully restored to its pre-loss condition." *Moeller*, 173 Wn.2d at 271.

Plaintiffs seek to certify the following class:

> All State Farm insureds with Washington policies issued in Washington State, where the insureds' vehicle damages were covered under Underinsured Motorist coverage, and
> 1. the repair estimates on the vehicle (including any supplements) totaled at least $1,000; and

2. the vehicle was no more than six years old (model year plus five years) and had less than 90,000 miles on it at the time of the accident; and

3. the vehicle suffered structural (frame) damage and/or deformed sheet metal and/or required body or paint work.

Excluded from the Class are (a) claims involving leased vehicles or total losses, and (b) the assigned judge, the Judge's staff and family.

Dkt. 28 at 8.

"Class certification is governed by Federal Rule of Civil Procedure 23." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). "As the party seeking class certification, [Plaintiffs] bear[] the burden of demonstrating that [they] ha[ve] met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001).

"Rule 23 does not set forth a mere pleading standard." *Dukes*, 564 U.S. at 350. Rather, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule . . . ." *Id.* Before certifying a class, the Court must conduct a "rigorous analysis" to determine whether Plaintiffs have met the requirements of Rule 23. *Zinser*, 253 F.3d at 1186. Although other courts in Washington have certified classes with nearly identical class descriptions in other diminished value cases, "the Court may not relax its Rule 23 analysis simply because similar classes have been certified by other courts." *Achziger*, 2016 WL 1276048 at *2. "While the trial court has broad discretion to certify a class, its discretion must be exercised within the framework of Rule 23." *Zinser*, 253 F.3d at 1186.

Under Rule 23(a), Plaintiffs must satisfy four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Parsons v. Ryan*, 754 F.3d 657, 674 (9th Cir. 2014). In addition to these four requirements, Plaintiffs must satisfy at least one of the categories of Rule 23(b). *Zinser*, 253 F.3d at 1186. Here, Plaintiffs seek certification under Rule 23(b)(3). Dkt. 48 at 14. A class action may be maintained under Rule 23(b)(3) if "questions of law or fact common to class members predominate over any questions affecting only individual members," and if "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

State Farm opposes Plaintiffs' motion, arguing that Plaintiffs' proposed class fails to satisfy Rule 23's requirements. Dkts. 54, 55. Specifically, State Farm opposes class certification on the bases that the proposed class fails the commonality and typicality prongs of Rule 23(a), or if any common questions of law or fact do exist, the proposed claims do not satisfy the predominance or superiority requirements of Rule 23(b)(3). Dkt. 54 at 14–24. State Farm does not challenge the numerosity of Plaintiffs' proposed class or the adequacy of the representation. *See id.* Because the Court agrees with State Farm that Plaintiffs' motion for certification should be denied, it will address only the Rule 23 requirements that are disputed.

### 1.    Commonality

State Farm argues that Plaintiffs' claims do not present questions of law or fact common to the potential claims of the proposed class. To satisfy the "commonality" prong of Rule 23(a), Plaintiffs need not show that "every question in the case, or even a

preponderance of questions, is capable of class-wide resolution. So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Parsons*, 754 F.3d at 675 (quoting *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013)) (quotation marks omitted). Therefore, "[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) (quotation omitted).

The Court finds that the commonality prong is satisfied by Plaintiffs' proposed class. *See Meyer*, 2015 WL 5156594 at *2. One important question of fact common to such a proposed class would be whether the implementation of certain State Farm's claim-handling policies and practices, such as its "word track" or the requirement that claimants submit separate and additional claims for diminished value beyond their initial UIM claim, were designed to underpay or entirely avoid paying coverage for diminished value on the UIM claims of the proposed class members. A closely related legal question would be whether or not the implementation of these policies and practices constitutes a breach of the implied covenant of good faith and fair dealing and can sustain a claim for violations of the CPA. These common questions satisfy the commonality prong of Rule 23(a).

### 2. Typicality

State Farm also argues that Plaintiffs have failed to satisfy the typicality prong of Rule 23(a). Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose

of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). To satisfy typicality, Plaintiffs must show "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2009). When evaluating typicality, the Court considers "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon*, 976 F.2d at 508 (internal quotation marks omitted).

The Court finds that the typicality prong is satisfied by Plaintiff Van Tassel's CPA claims as to the question of whether State Farm's implementation of its "word track" constitutes a CPA violation. Plaintiff Van Tassel submitted a UIM claim to State Farm that was compensated (at least in part) and he appears to have been informed of his policy's diminished value coverage by phone through State Farm's "word track." Dkt. 56-1 at 130.

On the other hand, it does not appear that Plaintiff Plank's claim was ever handled as a UIM claim prior to the commencement of this lawsuit. Accordingly, it does not appear that Plaintiff ever encountered State Farm's diminished value "word track," as the absence of a claim for UIM coverage would not implicate diminished value. While Plaintiff Plank states that he discussed diminished value coverage with his State Farm insurance agent via phone, he never discussed diminished value with a State Farm representative handling his claim. *See* Dkt. 56-1 at 35. State Farm contends that Plaintiff

Plank did not tender a UIM claim prior to the commencement of this lawsuit. In a letter

dated October 21, 2015, Plaintiff Plank informed State Farm of his pending settlement

offer from the at-fault driver's insurer in the amount of the at-fault driver's policy limit.

Dkt. 56-1 at 154. In the letter, Plaintiff Plank offered State Farm ten days in which to

purchase Plaintiff's cause of action against the at-fault driver for the remaining sum

under the applicable policy limit, "so as not to prejudice [State Farm's] right of

subrogation." *Id.* The letter also indicated that Plaintiff Plank would be making a UIM

claim for the remaining balance of the diminished value of his vehicle. *Id.* Specifically,

the letter states:

> We request a written response within l0 days as required by the Washington
> Administrative Code (WAC), Ch. 284-30-360. If we do not hear from you
> within 10 days, we will proceed to accept this offer.
>     We will then be making an underinsured motorist claim under Mr.
> Plank's underinsured motorist coverage for the balance of Mr. Plank's
> claim per the enclosure.

*Id.*

Plaintiff Plank's claims against State Farm raise questions as to whether State

Farm improperly failed to treat the October 21, 2015 letter as a UIM claim. But this

question is factually and legally distinct from the question of whether State Farm has

acted in bad faith or violated the CPA by the implementation of its "word track" or its

requirement that claimants specifically request diminished value damages when

submitting a UIM claim. Accordingly, the Court finds that the claims of Plaintiff Plank are not typical of the claims of the proposed class.[3]

### 3. Predominance and Superiority

The Rule 23(b)(3) "predominance inquiry focuses on the relationship between the common and individual issues and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Vinole v. Countrywide Home Loans*, 571 F.3d 935, 944 (9th Cir. 2009) (internal quotation marks omitted). Although related to Rule 23(a)'s commonality requirement, the predominance inquiry is "far more demanding." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997). "[A] central concern of the Rule 23(b)(3) predominance test is whether 'adjudication of common issues will help achieve judicial economy.'" *Vinole*, 571 F.3d at 944 (quoting *Zinser*, 253 F.3d at 1189). The Court finds that common questions do not predominate in this case because there are too many individualized factors in determining whether any particular vehicle actually suffers from diminished value.

The presence and severity of prior accidents is one such factor. "Washington law requires an insured with a UIM claim to prove he or she could recover diminished value from the other driver." *Achziger*, 2016 WL 1276048 at *5 (citing *McIllwain v. State Farm*, 133 Wn. App. 439, 446–47 (2006)). "If a vehicle has sustained prior damage in the

---

[3] Arguably, Plaintiff Plank does not qualify as a member of the proposed class, as it is reasonably disputed whether he ever submitted a UIM claim to State Farm. On the other hand, it is also debatable whether the proposed class definition in fact requires members to have actually submitted UIM claims to State Farm. Regardless, the Court not need further analyze this issue, as it was not raised by the parties.

same area, there may well be no diminished value and thus no liability." *Id.* at *5. Therefore, as noted previously by this Court in *Achziger,* assessing the presence and extent of prior accidents is not just a question pertaining to a damages calculation, but is an individual inquiry necessary to the underlying question of liability for any of Plaintiffs' claims predicated on diminished value.

This issue is illustrated by Plaintiff Van Tassel's claim, where there is some evidence that Plaintiff Van Tassel's vehicle had been involved in a hit-and-run accident prior to the incident on which his present claim is predicated. Dkt. 56-1 at 131. This suggests that the parties must conduct discovery into the conditions and extent of the previous accident and then assess how it may have reduced or eliminated any diminished value purportedly resulting from Plaintiff Van Tassel's latest accident. While State Farm regularly documents information regarding a vehicle's pre and post-accident condition in its claim files, Plaintiff Van Tassel's own claim illustrates that additional evidence can be uncovered regarding prior accidents that is not revealed in an insurer's initial inspection of the vehicle. *See* Dkt. 56-1 at 131.[4]

---

[4] The Court urges both parties to carefully consider the clarity of their citations in any future filings. *See* Dkt. 54 at 8. The Court attaches this footnote to this particular citation as an example because State Farm cited the original page number of a claim file, but that page number was obfuscated by text that had been superimposed over it.

In many of the record citations that were difficult to locate in these briefings, any difficulty would have been alleviated by the parties' compliance with Local Civil Rule 10(e)(3), which requires an abbreviated title of each filing and a page number. W.D. Wash. Local Rules LCR 10(e)(3). The parties should then incorporate that pagination requirement into the citations used in their briefs. It appears that the text superimposed over the cited page in this particular instance was an attempt at compliance with the pagination requirement of Local Civil Rule 10(e)(3). However, the superimposed page numbers did not accurately reflect the page numbers of the filing. Even if they had, the page number of the filing was not cited in the briefing.

Another issue unique to each of the proposed class members' individual claims is the manner in which State Farm resolved or failed to resolve UIM claims where a vehicle had suffered diminished value. For instance, Plaintiff Van Tassel appears to have discussed with State Farm the possibility that he may have diminished value coverage, *see* Dkt. 56-1 at 133, but State Farm ultimately never adjusted Plaintiff Van Tassel's UIM loss to include diminished value because he never presented State Farm with a specific claim for diminished value damages. On the other hand, Plaintiff Plank obtained a settlement from an at-fault driver's insurer for a portion of his vehicle's diminished value up to the underinsured driver's policy limit. *Id.* at 52, 211. Prior to this settlement with the underinsured driver's insurer, Plaintiff Plank sent a letter to State Farm expressing an intent to assert a claim under his UIM coverage for the remainder, but no claim was formally tendered before the filing of this lawsuit. *Id.* at 154.

In neither of these instances did the insured tender a specific claim for diminished value. Therefore, in regards to Plaintiffs' bad faith claims, each of these cases present an identical question of whether it violates the duty of good faith and fair dealing for State Farm to require that their insureds tender specific claims under their UIM policy for diminished value beyond their initial claims. However, in regards to Plaintiffs' breach of

---

The Court also notes that in other instances it would have been aided by the parties' adherence to Local Civil Rule 10(e)(6), which requires that parties "must include a citation to the docket number *and the page number* (e.g., Dkt. # __ at p. __)" when referencing previously filed materials. W.D. Wash. Local Rules LCR 10(e)(6) (emphasis added). Frustratingly, even when this procedure was followed (at least to the extent that the parties cited the already existing docket number), the cited document was often not properly filed. *See, e.g.*, Dkt. 74 at 13 (citing Dkt. 49-24, which consists of a title page and four blank pages).

contract claims, either scenario is unique in determining whether State Farm had

adequate notice of the existence of the purported diminished value for the duties

described in its coverage provisions to evolve into obligations to compensate a loss.

Taking this a step further, since Plaintiffs' claims are premised on allegations of

both undervalued and entirely unpaid claims for diminished value, one can contrast the

circumstances of Plaintiffs with those of class members to whom State Farm has already

paid some compensation on claims for diminished value. *See* Dkt. 74 at 16. State Farm's

claim handling procedures indicate that most, if not all, of the proposed class members

were informed at least to some extent of their UIM coverage for diminished value

because State Farm implements a "word track" that notifies any insureds making UIM

claims that their coverage may include diminished value to the vehicle. *See* Dkt. 47-15 at

2. This indicates that many of the proposed class members have already received some

compensation for diminished value if they submitted a claim that included diminished

value in the purported loss. To determine whether the payment that such class members

received from State Farm was adequate compensation for any vehicle's actual diminished

value is an individual inquiry that will require careful examination of the underlying

claim file and could be subject to significant individualized discovery into the condition

of the vehicle before and after the accident. This stands in stark contrast to cases such as

*Moeller*, in which the insurer had necessarily denied compensation to all its insureds with

UIM policies on the mistaken basis that diminished value was not covered. *See Moeller*,

173 Wn.2d at 269–77.

Plaintiffs argue that these issues are related to the calculation of damages and should not defeat class certification. *See* Dkt. 74 at 20–21. Indeed, in the Ninth Circuit, "damage calculations alone cannot defeat certification." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013) (quoting *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010)). However, the Court finds that these issues bear directly on the underlying question of liability for Plaintiffs' breach of contract claim. State Farm cannot be liable for breach of contract on any diminished value claim where it has already fully compensated for diminished value or no diminished value actually exists. Additionally, separate legal questions may arise as to the binding finality of any such payments or claim settlements if the payment was made on a disputed diminished value claim, which disputes could easily arise over the extent of a vehicle's diminished value. Even the varying circumstances between the cases of Plaintiffs Van Tassel and Plank highlight unique questions regarding State Farm's potential liability and the application of doctrines such as the "late tender" and "selective tender" rules.[5]

The Court makes an additional note that despite Plaintiffs' citation of numerous cases where identical or nearly identical classes were certified, the Court is not bound by those decisions. More importantly, with the exception of *Meyer*, 2015 WL 5156594, those cases offer little to no authoritative analysis as to how the proposed class satisfies

---

[5] The "late tender" rule "provides that an insurer must perform under the insurance contract even where an insured breaches the timely notice provision of the contract unless the insurer can show actual and substantial prejudice due to the late notice." *Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 164 Wn.2d 411, 417 (2008). The "selective tender" rule "preserves the insured's right to invoke or not to invoke the terms of its insurance contracts." *Id.* at 421–22.

the requirements of Rule 23. Nor do any of those cases, including *Meyer*, address the concerns discussed in this order. For instance, in their reply Plaintiffs have cited to the three most recent cases in Washington where diminished value class actions purportedly "present[ed] a series of common class-wide questions" and "have been certified, and then resolved." Dkt. 71 at 1. While Plaintiffs provide the case names and numbers, Plaintiffs have not offered any analysis on the relevant orders from these proceedings.[6] A review of the two cases from this district reveals that Judge Leighton certified the classes in *Lewis* and *Dawsey* "for settlement purposes only" where the purported satisfaction of Rule 23(a) and (b) requirements for class certification were uncontested. *See Dawsey v. Travelers Indemnity Co.*, 15-cv-05188-RBL, Dkt. 77 at 5 (W.D. Wash., Oct. 13, 2017); *Lewis v. Hartford Cas. Ins. Co., et al.*, 15-cv-05275-RBL, Dkt. 63 at 3 (W.D. Wash., Feb. 10, 2017). Accordingly, these cases offer no analytical support for Plaintiffs' motion to certify in this case, where the requirements for certification are disputed by State Farm.

Because the Court finds that common questions of law and fact do not predominate the case, Plaintiffs' motion for class certification is denied. Moreover, as the Court concludes that individual issues predominate over common issues, the Court cannot conclude that a class action is superior to requiring that the proposed class members proceed individually with their claims. *Zinser*, 253 F.3d at 1192 ("If each class member has to litigate numerous and substantial separate issues to establish his or her

---

[6] Notably, in the same vein touched upon by the Court in footnote 4 of this order, the unpublished order from Pierce County Superior Court in *Zarelli v. Encompass Ins. Co.* cited by Plaintiffs was either not cited in accordance with Local Rule 10(e)(6) or simply not provided in a usable form to the Court.

right to recover individually, a class action is not 'superior.'"). This is not to say that it would be impossible to cure these deficiencies by further narrowing or dividing the proposed class definition. For instance, Plaintiff Van Tassel might be successful in class certification if he were to limit the class definition to insureds who actually tendered UIM claims to State Farm and did not receive any compensation for diminished value. However, the Court need not discuss whether any permutations to the proposed class definition would ultimately permit class certification, nor would it be permissible for the Court to re-draft Plaintiffs' proposed class definition or prosecute their claims for them.

### IV.  ORDER

Therefore, it is hereby **ORDERED** as follows:

1.      State Farm's motions to exclude the expert testimony of Siskin and Toglia (Dkts. 42, 44) are **DENIED**; and

2.      Plaintiffs' motion for class certification (Dkt. 48) is **DENIED**.

Dated this 24th day of January, 2018.

BENJAMIN H. SETTLE
United States District Judge